# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

KYLE FINNELL,

      Plaintiff,

v.

TIMOTHY EPPENS,

      Defendant.

Case No. 1:20-cv-337

JUDGE DOUGLAS R. COLE

## OPINION AND ORDER

This cause comes before the Court on Defendant Timothy Eppens' Objections (Doc. 26) to the January 8, 2021, Report and Recommendation ("R&R", Doc. 24) of Magistrate Judge Stephanie Bowman. As relevant here, the R&R recommends that this Court (1) deny Plaintiff Kyle Finnell's Motion for Default Judgment (Doc. 11), and (2) deny Eppens' Motion to Dismiss Finnell's lawsuit against him for improper service (Doc. 17). (*See* Doc. 24, #313).

Only Eppens objects to the R&R—Finnell does not. In his Objections, Eppens argues that the Magistrate Judge erred in determining that service on Eppens sufficed here, even though it was technically insufficient under the Federal Rules of Civil Procedure. The Magistrate Judge based her decision partly on Finnell's status as a pro se prisoner litigant, and partly because the service had been consistent with certain practices that had developed in the wake of the COVID-19 pandemic.

For the reasons set forth more fully below, the Court **ADOPTS** the R&R's bottom-line conclusions that (1) Finnell's Motion for Default Judgment (Doc. 11) should be denied and (2) Eppens' Motion to Dismiss (Doc. 17) should be denied.

Although the Court disagrees with the R&R's determination that service was proper, the Court sua sponte extends the time for Finnell to serve Eppens with the Complaint through August 31, 2021, and will entertain further requests for extension of that time as needed. *See* Fed. R. Civ. P. 4(m). Accordingly, the Court **DENIES** Finnell's Motion for Default Judgement (Doc. 11) and **DENIES** Defendant's Motion to Dismiss (Doc. 17). In addition, the Court **REMANDS** the matter to the Magistrate Judge for additional proceedings consistent with this Order. In doing so, the Court notes that Eppens is also free to consider waiving service, especially given the demands that COVID-19 has placed, and continues to place, on the resources that the Court uses to effectuate service on behalf of pro se prisoner litigants.

## BACKGROUND

The Complaint is the only source of "facts" regarding the underlying dispute. Thus, the Court largely bases its background recitation here on those factual allegations. But the Court also refers to the Magistrate Judge's account of those allegations in an earlier R&R in which she screened the Complaint for frivolousness under 28 U.S.C. § 1915 and § 1915A. (Doc. 4). In that earlier R&R, the Magistrate Judge recommended dismissal of all claims against any defendant other than Eppens, a guard at the facility in which Finnell is incarcerated, who Finnell had sued in his individual capacity. (*Id.* at #52). On June 30, 2020, the District Judge then assigned to the case adopted that earlier R&R, and dismissed all claims against all other defendants with prejudice. (Doc. 6). The case was subsequently reassigned to the undersigned Judge on November 20, 2020. (Doc. 19).

The gist of Finnell's Complaint is that the officers in the Hamilton County Justice Center are "acting as the common thug." (Doc. 3, #33). His particular Complaint appears to involve an incident that occurred on June 3, 2019. Finnell had been to the courthouse that day, and upon his return he told unit staff that he wanted lunch. When thirty minutes passed with no lunch appearing, he and Eppens had "disrespectful words." (*Id.*). Eppens then told Finnell to return to his cell, but Finnell declined. An altercation ensued. Finnell claims that Eppens directed racial slurs at him, and also threw Finnell into a wall. When Finnell looked back over his shoulder, Eppens allegedly struck Finnell's left eye with a closed fist. Other officers arrived at the scene. Finnell claims he was placed in handcuffs, and taken to the facility's medical area, followed by transport to the UC Hospital. (*Id.* at #33–34).

As mentioned, the only claim that remains is Finnell's claim against Eppens. Finnell claims that Eppens' conduct amounted to excessive use of force in violation of Finnell's constitutional rights. (In his Complaint, Finnell locates this right in the Eighth Amendment. But, as the Magistrate Judge correctly noted, because Finnell was a pretrial detainee at the time, the source of his right against excessive force actually resides in the Fourteenth Amendment's due process clause. (*See* Doc. 4, #48, n.2). The difference, if any, between the standards under the two Amendments is immaterial for purposes of this Opinion.)

The issue here, though, is not related to the merits. Rather, the instant dispute involves service. And there is also a tale to tell on that front. The Complaint in this action was originally docketed on June 15, 2020. After the Magistrate Judge screened

3

the Complaint for frivolousness, the Magistrate Judge ordered service on the sole-remaining defendant, Eppens. Under Fed. R. Civ. P. 4(m), which provides 90 days for service, Finnell had until September 13, 2020, to accomplish the task. But the reference to "Finnell" in the previous sentence is a bit misleading. Because Finnell is incarcerated and proceeding pro se, the Clerk's Office of this Court coordinates service through the United States Marshals Service. *See* Fed. R. Civ. P. 4(c)(3) (noting that the court "must … order [service by the United States marshal] if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915").

Typically, the Marshals would perform personal service in such actions. In June 2020, though, events were afoot that interfered with their normal practices on that front. In particular, the COVID-19 pandemic was sweeping across the country, indeed, around the world. Court systems nationwide were struggling with how best to respond in order to ensure that their essential services could continue to operate in ways that were cognizant of parties' rights and also public health.

One response was that the Marshals altered their typical approach to service, using certified mail to accomplish the task. But here, that created additional problems. The Magistrate Judge ordered the Marshals to serve a copy of the Complaint and Summons on "Timothy Eppans," rather than "Timothy Eppens." Thus, when the Marshals sent certified mail in June 2020 to "Timothy Eppans" at the Hamilton County Justice Center, where Eppens worked, it came back on August 21, 2020, marked "Return to Sender – Attempted, Not Known."

During the interim, on July 24, 2020, Finnell had filed a Motion for Default Judgement (Doc. 11). He did so even though Eppens had not yet been properly served.

Based on the returned certified mail, the Magistrate Judge discovered the spelling error. So, on August 21, 2020, she ordered the Complaint and Summons to be served on "Timothy Eppens." The Marshals again attempted to serve him by certified mail, again at his place of work.

This time, Eppens received the Complaint (more on that below). But COVID-19 presented one last wrinkle. The certified mail return receipt, which is typically signed by someone at the addressee's location, was instead signed by the postal carrier who delivered it. That occurred because the United States Postal Service ("USPS") had adopted a signature policy for certified mail in response to the COVID-19 pandemic. Rather than force the face-to-face interaction that a signature requirement would otherwise entail, the USPS instructed its delivery personnel to ensure that someone was at the address to receive the letter, to ask that person for their name, and to then leave the letter where the person could get it. The mail carrier then fills out the return receipt. So, here, the signature appears to be "GC Rt 232" (which the Court takes as a reference to the postal carrier on Route 232), and the return receipt also says received by "CO-19" (which the Court takes to be a reference to COVID-19), and provides a date of October 8, 2020. (Doc. 23, #305). In short, the mail carrier is affirming delivery to a person at the address, on that date, and providing an explanation (COVID-19) as to why that person has not signed.

As noted above, while no one at Eppens' workplace technically signed for the letter, it is nonetheless clear that Eppens received it. We know that because the Summons provided that Eppens must respond within twenty-one days. And, sure enough, on October 29, 2020 (twenty-one days after October 8, 2020), Eppens filed a motion to dismiss for lack of service (Doc. 17), and two attorneys from the Hamilton County Prosecutor's Office entered appearances on his behalf.

In the motion, Eppens makes three basic arguments. First, he argues that he was not served within 90 days of the date on which the Complaint was originally docketed. *See* Fed. R. Civ. P. 4(m). Second, Eppens contends that service by certified mail at a work address does not comply with the Federal Rules. Third, and finally, Eppens argues that service by certified mail does not comply with Ohio rules for service (the federal rules of civil procedure say a party in federal court can rely on the rules for service in the state in which the federal court is located, *see* Fed. R. Civ. P. 4(e)(1)), because serving Eppens at the Hamilton County Justice Center (his place of work) was not "reasonably calculated … to apprise [him] of the pendency of the action." (Doc. 17, #183). That is especially true here, Eppens claims, because there was no signature on the certified mail receipt, as Ohio service rules require. (*Id.*). As support for his arguments regarding service, Eppens also relied extensively on *Beezley v. Hamilton County*, 674 F. App'x 502 (6th Cir. 2017), another case involving attempted service on Hamilton County corrections officers, in which the Sixth Circuit required technical compliance with service rules.

In the R&R (Doc. 24) at issue here, the Magistrate Judge recommends denying (1) Finnell's Motion for Default Judgment (Doc. 11), and (2) Eppens' Motion to Dismiss (Doc. 17). As to the former, the Magistrate Judge notes that at the time Finnell moved for default, there was no indication that the Eppens even had been properly served with the Summons and Complaint. Moreover, she notes, Eppens' Motion to Dismiss means there is no evidence that Eppens has failed to plea or otherwise defend himself in this action.

As to Eppens' Motion, she acknowledges that the Complaint was not served within ninety days of its original docketing, but says that the Order reissuing the summons and complaint in August 21, 2020, reset that 90-day clock. As for serving Eppens at his place of work, she indicates that "service has been routinely accepted by corrections officers for the Hamilton County Sherriff's Office at this address." (Doc. 24, R&R, #312). And as for the lack of a signature, she noted that General Order 20-39, issued December 29, 2020, as part of the Southern District's ongoing response to the COVID-19 pandemic, allowed notations such as "COVID" or "COVID-19" to count as signatures for purposes of the certified mail return receipt.

Only Eppens objects to the R&R. On the timing front, he claims the clock runs from original docketing, not reissuance of the summons. As to certified mail, he argues (1) that federal law does not allow for certified mail service, (2) that Ohio law allows service by certified mail "only at a defendant's home address not his workplace"; (3) that the lack of signature dooms any claim to proper service under Ohio law; (4) that the General Order regarding signatures on certified mail was

7

entered more than two months after the service at issue here, and thus cannot change that result; (5) that any claim that Hamilton County "routinely accepted service at the Justice Center" in these types of suits must be "based upon Judicial Notice because there is nothing in the record establishing it"; and (6) that Eppens' actual knowledge of the lawsuit is irrelevant to the service question.

Finnell did not respond.

**LEGAL STANDARD**

If a party objects within the allotted time to a report and recommendation, the Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see also* Fed R. Civ. P. 72(b)(2)–(3). Upon review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Importantly, the Court's job is not to conduct a free-wheeling examination of the entire R&R, but only to address any specific objections that a party has advanced to some identified portion of that R&R.

**LAW AND ANALYSIS**

As an initial matter, the Court notes that Finnell's failure to object to the Magistrate Judge's R&R means he has forfeited appellate review—including District Court review—of the Magistrate Judge's determination that his Motion for Default Judgment (Doc. 11) should be denied. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 152 (1985); *Berkshire v. Beauvais*, 928 F.3d 520, 530 (6th Cir. 2019).

Therefore, the Court **ADOPTS** that part of the Magistrate Judge's Report and Recommendation and **DENIES** Finnell's Motion for Default Judgment (Doc. 11).

The Court now turns to Eppens' Objections. Proper service is undoubtedly important. "In the absence of 'proper service of process, content, waiver, or forfeiture, a court may not exercise personal jurisdiction over a named defendant.'" *Boulger v. Woods*, 917 F.3d 471, 476 (6th Cir. 2019) (quoting *King v. Taylor*, 694 F.3d 650, 655 (6th Cir. 2012)). "And without personal jurisdiction, a federal court is 'powerless to proceed to an adjudication.'" *Id.* (quoting *King*, 694 F.3d at 655 (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999))). Thus, failure to achieve proper service at the outset of a case has important implications for a plaintiff down the road, as any judgment the plaintiff receives would be a nullity.

The Federal Rules of Civil Procedure, and in particular Rule 4, set forth the manner in which a party may be validly served. To start, there is a time limit. A party must be served "within 90 days after the complaint is filed." Fed. R. Civ. P. 4(m). If that does not occur, the Court has two options: (1) "dismiss the action without prejudice" against the unserved defendant, or (2) "order that service be made within a specified time." *Id.* And, given that the rule specifically makes the latter option available *after* the time for service has passed, courts have held that "[a] district court may … extend time for service retroactively after the [specified] service period has expired." *United States v. 2,164 Watches, More or Less Bearing a Registered Trademark of Guess, Inc.*, 366 F.3d 767, 772 (9th Cir. 2004) (citing *Mann v. Am. Airlines*, 324 F.3d 1088, 1090 (9th Cir. 2003)); *see also Small v. Georgia*, 446 F. Supp.

3d 1352, 1358 (S.D. Ga. 2020) (retroactively extending time for service in prisoner suit against correctional officers).

Beyond the time limit, the Rule also specifies the methods of service. In particular, the Rule provides that service can be accomplished by: (1) "delivering a copy of the summons and of the complaint to the individual personally"; (2) "leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there"; or (3) "delivering a copy of each to an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e)(2)(A)–(C). Alternatively, and as more relevant here, service can also be accomplished by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(e)(1).

Ohio law provides for service by certified mail. Eppens contends that an individual defendant is subject to such service only at that "defendant's home address," and not the defendant's work address. (Objection, Doc. 26, #319). But the Ohio Supreme Court says otherwise. *See Akron-Canton Reg'l Airport Auth. v. Swinehart*, 406 N.E.2d 811, 814 (Ohio 1980). "[C]ertified mail service sent to a business address" is valid service "if the circumstances are such that successful notification could be reasonably anticipated." *Id*.; *accord Chuang Dev. LLC v. Raina*, 91 N.E.3d 230, 239 (Ohio Ct. App. 2017). That, in turn, means that for such service to be valid, "the party being served must have such a habitual, continuous or highly continual and repeated physical presence at the business address that the party

ordering service of process would have reasonable grounds to calculate that the service would promptly reach the party being served." *Chuang Dev.*, 91 N.E.3d at 239–40.

Then there is the separate matter of signature. Under the Ohio rules, service by certified mail must be "[e]videnced by return receipt signed by any person." Ohio Civ. R. 4.1(A)(1)(a). And Ohio case law confirms that "any person" should be understood broadly. *See Indian Creek Condo. Prop. Owners Ass'n. v. Team Equity*, No. 28369, 2019 WL 6341040, at *6 (Ohio Ct. App. Nov. 27, 2019) ("Valid service of process is presumed when the envelope is received by any person at the defendant's residence; the recipient need not be the defendant or an agent of the defendant.") (quotation omitted) But, as that quote suggests, it may be that this broad scope extends only to others residing (or working) at the indicated address, and not necessarily to mail carriers who deliver the materials to the address—COVID-19 pandemic notwithstanding.

The Southern District likewise addressed the signature issue. On December 29, 2020, the Court issued General Order 20-39, directed at "Service of Process by Certified Mail During the COVID-19 Pandemic." Noting the change in USPS processes regarding signature, the Court ordered that "service of process may be evidenced by delivery of certified mail … by the USPS as reflected by notations of 'COVID,' 'COVID-19,' or other similar notations consistent with the USPS' temporary modifications to its certified mail procedures." *Id*. But, while that order was "effective immediately," the Court did not even purport to order retroactive application.

11

So, what to make of all of that here? First, even if the service on October 8, 2020, was accomplished by a valid method, it was untimely, or at least arguably so. As noted, the Complaint was docketed on June 15, 2020, so the time for service expired 90 days later, on September 13, 2020. To be sure, the Magistrate Judge reissued the summons in August. Perhaps that could be understood as the Magistrate Judge implicitly exercising her power under Rule 4(m) to extend the time for service, but if so, the rule requires that the Court "order that service be made within a specified time." The Magistrate Judge did not do so expressly. And, given the potential consequences down the road if it turns out service was untimely, the Court is hesitant to conclude that the Magistrate Judge did so implicitly.

Compounding the problem, the Court has significant concerns that the service was not proper even if it was timely. Certified mail service at the place of work is fine in this case, as it would be hard to argue that Eppens does not have the necessary "habitual," or "continuous" presence at the prison facility to make certified mail service at his work address appropriate under Ohio law. But the signature issue presents a problem. The Court is unable to locate any specific Ohio law implementing a modification to the signature requirement based on COVID-19. Thus, while "any person" may be broad, the Court cannot be confident that it would extend to a mail carrier's signature. As for General Order 20-39, even assuming it could effectively modify the Ohio signature requirement, it was not in place in October 2020, nor is it retroactive.

In short, the Court concludes that Eppens is correct that service on him is not valid. At least not yet.

But that leaves the separate question of remedy. Eppens wants dismissal without prejudice. As noted above, though, Rule 4 also provides the Court the option to extend the time for service, and to do so "on its own." The Court elects to follow that path here for multiple reasons. First, it was this Court itself that undertook to arrange for service. So any shortfalls in the methods used should not act to deprive Finnell of the opportunity to explore the merits of his claims. Second, the COVID-19 pandemic created such a significant disruption of the judicial system that efforts to remediate that impact only make sense. Third, at every turn with regard to service here (and in other cases), the Court has been seeking to ensure fair notice to defendants, while also minimizing the potential for harm to those in the United States Marshal's Service or to the public at large. To the extent that those efforts fell short, this Court finds that good cause exists to extend the time for compliance.

Accordingly, the Court disagrees with the R&R's determination that service here was proper. But the Court nonetheless adopts the R&R's bottom-line conclusion that Eppens' Motion to Dismiss (Doc. 17) should be denied, and the Court further sua sponte exercises its power under Fed. R. Civ. P. 4(m) to extend the time for service in this matter until August 31, 2021. Moreover, if service cannot be accomplished by that time, the Court instructs the Magistrate Judge to extend the time by an additional three months as necessary.

The Court also observes that the Magistrate Judge may want to consider whether Fed. R. Civ. P. 4(d) may make a request for waiver of service possible on the facts here. After all, an individual "has a duty to avoid unnecessary expenses of serving the summons." Fed. R. Civ. P. 4(d)(1). And, if a defendant fails to waive service without good cause, the court "must impose on the defendant … the expenses later incurred in making service." Fed. R. Civ. P. 4(d)(2)(A). That provision may come into play if Eppens were to refuse waiver of service here.

## CONCLUSION

For the above-stated reasons, the Court **ADOPTS** the R&R's (Doc. 24) recommendation to deny both Finnell's Motion for Default Judgment (Doc. 11) and Eppens' Motion to Dismiss (Doc. 17), though the Court disagrees with the R&R to the extent that it finds that service here was proper. At the same time, the Court sua sponte **EXTENDS** the time for service through August 31, 2021. Accordingly, the Court **DENIES** Finnell's Motion for Default Judgment (Doc. 11), **DENIES** Eppens' Motion to Dismiss (Doc. 17), and **REMANDS** the matter to the Magistrate Judge for further proceedings consistent with this Opinion.

**SO ORDERED.**

June 4, 2021
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**